**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TROY BRITT,**

                                        **Plaintiff,**

        **vs.**                                        **9:17-CV-0234**
                                                        **(MAD/DEP)**

**ANNE CARBERRY,** *et al.*,

                                        **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**TROY BRITT**
781 E. 135th Street
Bronx, New York 10454
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**                **KYLE W. STURGESS, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

*Pro se* plaintiff, Troy Britt ("Plaintiff"), a former New York State prison inmate,

commenced this civil rights action against several individuals employed by New York State

Department of Corrections and Community Supervision ("DOCCS") pursuant to 42 U.S.C. §

1983. Dkt. No. 1. As narrowed by a series of decisions of this Court, Plaintiff's claims currently

at issue include allegations that (1) Defendants T.L. Penn ("Nurse Penn") and Dr. M. Chalom

violated Plaintiff's Eight Amendment rights by exhibiting deliberate indifference to Plaintiff's

medical needs; and (2) Defendants Anne Carberry and Sergeant Thomas McKinley ("Sgt.

McKinley") violated Plaintiff's Fourteenth Amendment due process rights in connection with

Plaintiff's Tier III disciplinary hearing. *See* Dkt. Nos. 1, 4, 8, 9, 24, 25, 49, 50. Plaintiff's claims arose from events between July 30, 2015 and about October 7, 2016, while he was in custody of DOCCS as an inmate in Ogdensburg Correctional Facility ("Ogdensburg C.F."), Riverview Correctional Facility ("Riverview C.F."), and Upstate Correctional Facility ("Upstate C.F."). *See* Dkt. No. 50.

On September 27, 2018, Defendants moved for entry of summary judgment dismissing Plaintiff's remaining claims on the merits. *See* Dkt. No. 73. In a February 1, 2019 Report and Recommendation, Magistrate Judge Peebles recommended Plaintiff's second amended complaint be dismissed in its entirety for failure to prosecute and comply with this Court's orders and local rules of practice and that Defendants' motion for summary judgment be denied as moot. *See* Dkt. No. 81. On February 14, 2019, Plaintiff filed objections to the February 1 Report and Recommendation. *See* Dkt. No. 84. Subsequently, Magistrate Judge Peebles issued the March 22, 2019 Report and Recommendation presently before this Court. *See* Dkt. No. 87.

In the March 22, 2019 Report and Recommendation, Magistrate Judge Peebles recommended that Defendants' motion for summary judgment be granted and Plaintiff's second amended complaint be dismissed in its entirety. *See* Dkt. No. 87. Specifically, Magistrate Judge Peebles found (1) Plaintiff failed to exhaust his administrative remedies with respect to his October 2015 grievance; (2) Plaintiff failed to establish a sufficiently serious deprivation and failed to establish that Defendants Dr. Chalom and Nurse Penn had the requisite state of mind with respect to his deliberate indifference claims and; (3) although Plaintiff had a liberty interest, he was afforded the necessary procedural protections with respect to his disciplinary hearing and due process claims against Defendants Sgt. McKinley and Carberry. *See id.* Neither party objected to the March 22 Report-Recommendation and Order.

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

### III. DISCUSSION

**A.    Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2502, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *Id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## B.    Exhaustion

The Prison Litigation Reform Act ("PLRA") expressly provides that "no action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).  In the event a defendant establishes that an inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal.  *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Wilson v. McKenna*, 661 Fed. Appx. 750, 752 (2d Cir. 2016).  "Proper exhaustion requires a plaintiff to procedurally exhaust his claims by compl[ying] with the system's critical procedural rules," and "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90, 95.  In the context of a Section 1983 claim, the court must look at the relevant state's prison procedures to determine if the inmate-plaintiff complied with the appropriate procedures.  *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548 U.S. at 88-90.

New York State has a three-step administrative review process, or Inmate Grievance Program ("IGP").  *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.  First, a grievance must be submitted to the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged occurrence giving right to the complaint.  *See* 7 N.Y.C.R.R. § 701.5(a)(1).  After the grievance has been filed, the IGRC reviews and investigates the formal complaint and must informally resolve the issue within sixteen days of the filing or conduct a hearing.  *See id*. at § 701.5(b).  Second, within seven days after receipt of the IGRC's written decision, the inmate-plaintiff may appeal to the superintendent of the facility, who must then issue a written decision

within a certain number of days.[1] *See id.* at § 701.5(c). Third, within seven days after the receipt of the superintendent's decision, the inmate-plaintiff may appeal it to the Central Office Review Committee ("CORC"), who will issue the final administrative decision. *See id.* at § 701.5(d). When an inmate does not receive a timely response to a filed grievance, the inmate is permitted to appeal "to the next step." *See id.* at § 701.6(g)(2).

If all three of these levels of review are exhausted, then the inmate may seek relief in federal court pursuant to § 1983. *See Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. N.Y.*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing . . . (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, the plaintiff has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006).

In the current case, Defendants claim Plaintiff failed to satisfy the exhaustion requirements for all claims contained in the second amended complaint. *See* Dkt. No. 73. During Plaintiff's deposition on July 30, 2018, Plaintiff expressed a general understanding of how the

---

[1] Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3).

grievance process operates.  Dkt. No. 73-2 at 58-59.  DOCCS computer printouts show that Plaintiff properly appealed at least six other grievances prior to commencing this action, thereby demonstrating that Plaintiff generally knew how to exhaust his administrative remedies prior to filing suit.  Dkt. No. 73-5 at 6.

Although DOCCS records do not show any grievances which were filed and appealed regarding the claims of deliberate indifference against Defendants Dr. Chalom and Nurse Penn, Plaintiff contends he filed three grievances for "medical," or inadequate medical care, in October 2015, January 2016, and on July 7, 2016.  Dkt. No. 73-2 at 59-64; *See* Dkt. No. 73-5 at 6. Plaintiff alleges he filed a grievance with the grievance office at Ogdensburg C.F. in October 2015 in connection with the medical treatment Plaintiff received on July 30, 2015.  Dkt. No. 73-2 at 60-61.  Even assuming the DOCCS records were incorrect and the grievance was filed, it would have been filed over two months after Plaintiff received the complained of medical treatment and therefore untimely.  Dkt. No. 74-1 at 30; *see* 7 N.Y.C.R.R. § 701.5(a)(1).  Untimely grievances are insufficient to exhaust administrative remedies.  7 N.Y.C.R.R. § 701.5(a)(1); *see, e.g., Adams v. O'Hara*, No. 16-CV-0527, 2019 WL 652409, *7 (N.D.N.Y. Feb. 15, 2019) ("Filing an untimely grievance without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies"); *Girard v. Cuttle*, No. 15-CV-0187, 2018 WL 4190140, *5 (N.D.N.Y. Aug. 10, 2018) ("An untimely grievance does not satisfy the exhaustion requirement").

Although Plaintiff wrote a follow up letter on the October 2015 grievance to the Ogdensburg C.F. Deputy Chief Medical Officer Carl J. Koenigsmann, this too was insufficient to properly exhaust Plaintiff's administrative remedies because Koenigsmann is a prison official outside of the grievance chain of command.  Dkt. No. 73-2 at 60-62; *see Louis-Charles v. Barker*,

No. 16-CV-1417, 2018 WL 4299982, *2 (N.D.N.Y. Sept. 10, 2018) (citing *Geer v. Chapman*, No. 15-CV-952, 2016 WL 6091699, *5 (N.D.N.Y. Sept. 26, 2016); *see also Macias v. Zenk*, 495 F.3d 37, 44-45 (2d Cir. 2007).[2]

Plaintiff asserted he submitted a second grievance to the grievance office at Ogdensburg C.F. in January 2016. Dkt. No. 73-2 at 63. Plaintiff also alleges he filed a third grievance on July 7, 2016 by handing the grievance to an officer to mail for him while he was confined in the Riverview C.F. Special Housing Unit ("SHU"). Dkt. No. 73-2 at 63-64. Although these grievances would have been timely with the corresponding medical treatment, Plaintiff did not receive a response and did not follow up or file any appeals. Dkt. No. 73-2 at 63-64. Therefore, Magistrate Judge Peebles correctly found that Plaintiff failed to properly use the IGP and proceeded to address a possible exception to the exhaustion requirement.

Although the PLRA requires inmates to exhaust all available administrative remedies prior to filing a § 1983 claim, courts have interpreted this Act to contain an important textual exception: an inmate is not required to exhaust administrative remedies if such remedies are not "available." *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). There are three circumstances in which the Supreme Court has found administrative remedies are not available. *Id.* at 1855. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Id.* at 123

---

[2] While placing prison officials on notice of a grievance through less formal channels may constitute a claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

(quoting *Ross*, 136 S. Ct. at 1859).  "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'"  *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859).  "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860).

In this case, there is no allegation that the staff at Ogdensburg C.F. or Riverview C.F. discarded or otherwise interfered with Plaintiff's grievances.  *See generally* Dkt. No. 50. Therefore, Magistrate Judge Peebles proceeded to address the Second Circuit's treatment of the availability of New York's IGP when the inmate does not receive a response to filed grievances.

In *Williams*, an inmate-plaintiff allegedly gave a prison guard a grievance to file on his behalf, but it was never filed and the inmate was subsequently transferred and never received a response.  *Williams*, 829 F.3d at 120-21.  The Second Circuit addressed whether administrative remedies were "available" to the inmate-plaintiff and concluded that New York regulations do not clearly outline the process to appeal an unfiled and unanswered grievance.  *See id.* at 124.  As such, the Court held that "the grievance procedures that were technically available to [the plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.'"  *Id.* (quoting *Ross*, 136 S. Ct. at 1859).

In contrast, the Second Circuit in *Cicio* found that when an inmate claimed he filed a written grievance with the IGRC, but the IGRC supervisor could not find a record of the grievance and the parties agreed the plaintiff never received a response, the situation was not so opaque that it became "incapable of use."  *Cicio v. Wenderlich*, 714 Fed. Appx. 96, 97-98 (2d Cir. 2018).  There, the Court found that "[w]hen a prisoner has filed a grievance, but receives no response, the regulations provide a right of appeal."  *Id.*

Magistrate Judge Peebles appropriately reasoned that the facts of the present case fall somewhere in between *Williams* and *Cicio*. The IGP supervisors at both Ogdensburg C.F. and Riverview C.F. submitted declarations stating they could find no record of Plaintiff's grievances in their respective offices. Dkt. Nos. 73-3, 73-4. However, Plaintiff alleges that he handed the second grievance to the Ogdensburg C.F. grievance office, and the third grievance to a prison guard while in Riverview C.F. SHU. Dkt. No. 73-2 at 63-64. Plaintiff claims that he did not receive a response to either grievance, and simultaneously concedes that he made no attempt to follow up or otherwise appeal. Dkt. No. 73-2 at 61-64. Plaintiff's third grievance is further complicated by his transfer from Riverview C.F. SHU to Upstate C.F. SHU. Dkt. No. 73-2 at 147-49.

Although Plaintiff's first, untimely grievance was clearly insufficient to exhaust his administrative remedies, the Court is unable to come to the same conclusion with respect to the second and third grievances. The Court agrees with Magistrate Judge Peebles' acknowledgment that whether administrative remedies were available is a somewhat nebulous issue in light of *Cicio* and *Williams*, as well as the specific facts of this case. Therefore the Court finds that Magistrate Judge Peebles' correctly determined Defendants' summary judgment motion cannot be granted with regard to the alleged January 2016 and July 7, 2016 grievances on this procedural basis.

Based on the foregoing, the Court finds that Magistrate Judge Peebles correctly determined that Defendants' Motion for Summary Judgment should be granted with respect only to the grievance allegedly filed in October 2015 regarding the medical treatment rendered by Dr. Chalom on July 30, 2015. As such, Plaintiff's claim as to his first grievance is dismissed for his failure to exhaust.

## C.    Deliberate Indifference

For a plaintiff to effectively state an Eighth Amendment claim for denial of adequate medical care, he must demonstrate that the accused prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The deliberate indifference standard for denial of medical care requires demonstration of (1) a sufficiently serious depravation, and (2) deliberate indifference with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citation omitted).

### 1. Sufficiently Serious Depravation

The sufficiently serious depravation inquiry is the objective prong of the deliberate indifference standard. *See Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citation omitted). Under this prong, relevant considerations include "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (other citation omitted). Further, the court may examine whether the deprivation represents "a condition of urgency, one that may produce death, degeneration, or extreme pain[.]" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted). As the Second Circuit has stated, the relevant inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition[.]" *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

In this case, Plaintiff's deliberate indifference claims generally arise out of a disagreement over the medical treatment Plaintiff received from Dr. Chalom and Nurse Penn while he was an inmate. *See* Dkt. No. 50. Standing alone, Plaintiff's disagreement "does not create a

constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *accord, Fuller v. Lantz*, 549 Fed. Appx. 18, 21 (2d Cir. 2013); *see also Estelle*, 429 U.S. at 107 (concluding that a medical professional's decision regarding which diagnostic techniques or forms of treatment are indicated "is a classic example of a matter for medical judgment" and does not give rise to a constitutional claim).

Nevertheless, Plaintiff also alleges he was denied adequate medical care. *See generally* Dkt. Nos. 50, 77. Although Plaintiff references suffering from "serious bacteria," "Methicillin-Resistant Staphylococcus Aureus" ("MRSA"), and a "deadly infection," the record reflects he suffered from recurring cellulitis[3] and received treatment on each occasion that he requested medical assistance. Dkt. No. 50 at ¶¶ 13-15; Dkt. No. 74-1 at 25-26, 28, 30; Dkt. No. 77 at 8.

When Plaintiff requested medical attention while in custody in Ogdensburg C.F. on July 30, 2015 and January 26, 2016, Dr. Chalom examined him and prescribed him antibiotics for cellulitis. Dkt. No. 74 at 3; *see also* Dkt. No. 74-1 at 30, 28; *see also* Dkt. No. 50 at 10. Although at varying points in the record Plaintiff contends otherwise, Plaintiff's medical records indicate Dr. Chalom did not provide any further medial treatment to Plaintiff. *See* Dkt. No. 50; Dkt. No. 74 at 3-4; *see generally* Dkt. No. 74-1. There is nothing in the record to suggest Dr. Chalom's decision to prescribe certain medications was anything other than an appropriate exercise of his discretion to determine the method of care and treatment to provide to Plaintiff. *See Estelle*, 429 U.S. at 107.

---

[3] "Cellulitis is 'an acute, diffuse, spreading edematous, suppurative inflammation of the deep subcutaneous tissues, and sometimes muscle, sometimes with abscess formation.'" *Nelson v. Dougherty*, No. 10-CV-1568, 2012 WL 4026682, *1 (N.D.N.Y. Aug. 13, 2012) (quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 330 (31st ed. 2007)).

When Plaintiff requested emergency medical attention on June 29, 2016, Nurse Penn examined Plaintiff at Ogdensburg C.F. and aware of Plaintiff's impending transfer, then contacted medical staff at Riverview C.F. to examine Plaintiff upon his intake. Dkt. No. 73-2 at 74; Dkt. No. 73-7 at 18, 20-25; *see* Dkt. No. 73-9 at 3; Dkt. No. 74-1 at 25-26. Plaintiff concedes he was subsequently examined by a doctor at Riverview C.F. and given a prescription for antibiotics, which resolved his complaints. Dkt. No. 73-2 at 137-38; *see also* Dkt. No. 74-1 at 25-26. The record indicates that Nurse Penn appropriately exercised her judgment to determine the method of care and treatment to be provided to Plaintiff, within the scope of her authority as a registered nurse. Dkt. No. 73-9 at 2; *see Estelle*, 429 U.S. at 107.

Therefore, the Court agrees with Magistrate Judge Peebles' assessment that a reasonable fact finder would not conclude that Plaintiff's cellulitis was sufficiently severe as to support the first factor or objective test for deliberate medical indifference. The Court further finds Magistrate Judge Peebles correctly determined that even if a reasonable fact finder could conclude Plaintiff's condition was sufficiently severe, no reasonable fact finder could conclude that Defendants' care was inadequate, or if in any way inadequate, that it was sufficiently serious. The Eighth Amendment does not afford prisoners a right to medical treatment of their choosing and prison medical personnel have broad discretion to determine what method of care and treatment to provide to their patients. *See Estelle*, 429 U.S. at 107*; see also Dean v. Coughlin*, 804 F.2d 207 (2d Cir. 1986).

### 2. Culpable State of Mind

The second prong of the deliberate indifference standard is a subjective test requiring the plaintiff to show that the defendant acted with the requisite culpable state of mind. *Hathaway*, 37 F.3d at 66. This state of mind is similar to criminal recklessness and requires "something more

than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

In this case, the record shows Plaintiff's condition was addressed and Defendants did not turn a blind eye or fail to act while aware of a substantial risk of harm to Plaintiff's health or safety. Dkt. No. 73-2 at 74; Dkt. No. 73-7 at 18, 20-25; *see* Dkt. No. 73-9 at 3; Dkt. No. 74 at 3-4, 25-26; *see generally* Dkt. No. 74-1; *see also* Dkt. No. 50 at 10. Therefore, the Court agrees with Magistrate Judge Peebles' conclusion that even if Plaintiff could satisfy the objective prong, no reasonable fact finder could conclude that Dr. Chalom or Nurse Penn acted with the requisite deliberate indifference.

Based on the foregoing, the Court finds that Magistrate Judge Peebles correctly determined that Defendants' Motion for Summary Judgment should be granted with respect to Plaintiff's deliberate medical indifference claims.

**D.     Due Process Claim**

Defendants argue there is no genuine issue of material fact as to whether Plaintiff's ninety-day disciplinary confinement constituted an atypical and significant hardship. Dkt. No. 73-11 at 18-19; Dkt. No. 78 at 10-11. Further, Defendants argue even if Plaintiff was deprived of a cognizable liberty interest, Plaintiff was afforded sufficient due process. Dkt. No. 73-11 at 19-24; Dkt. No. 78 at 9-10. Plaintiff has not addressed Defendants' liberty interest argument, but contends he was deprived of procedural due process in connection with his disciplinary hearing held in July of 2016. *See* Dkt. No. 77.

*1. Liberty Interest*

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)); *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In *Sandin*, the Supreme Court held that although states may create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. 483-84 (internal citations omitted).

The prevailing view in the Second Circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *See, e.g., LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin*, No. 94-CV-0985, 2001 WL 118598, *6 (N.D.N.Y. Feb. 6, 2001). Accordingly, Magistrate Judge Peebles appropriately addressed whether Plaintiff's SHU confinement rose to the level of an atypical and significant hardship under *Sandin*. Dkt. No. 87 at 38-39.

The Second Circuit has not set a bright line rule on when confinement becomes atypical. "In order to determine whether a liberty interest has been affected, district courts are required to

examine the circumstances of a confinement . . . and to identify with specificity the facts upon which [their] conclusions [are] based." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citations omitted). While under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of 101 days or less will not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *see Colon v. Howard*, 215 F.3d 227, 231, 232 n.5 (2d Cir. 2000). The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

In the present case, at Plaintiff's July 2016 disciplinary hearing, Defendant Carberry found Plaintiff guilty and imposed a ninety-day SHU confinement. Dkt. No. 73-7 at ¶¶ 13, 14. As Plaintiff has alleged unusual conditions, the Court must address whether the record reflects that Plaintiff was subject to "conditions more onerous than usual" during his confinement. *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citing *Colon*, 215 F.3d at 232-33 n.5 (2d Cir. 2000)). The Court must examine the conditions of confinement "'in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.'" *Id.* at 134 (quoting *Welch v. Bartlett*, 196 F.3d 389, 392-93 (2d Cir. 1999)).

For the duration of Plaintiff's ninety-day disciplinary confinement, he was confined in Riverview C.F. SHU for the first sixteen days, and then in Upstate C.F. SHU for the remainder of the ninety days. Dkt. No. 73-2 at 147-49. Plaintiff alleges that in Riverview C.F. SHU, the shower walls and floors were dirty with mildew, there was a rodent infestation in his cell, and

there was a light in his cell illuminated from 6:00 a.m. to 11:00 p.m. Dkt. No. 50 at 18. Plaintiff further alleged that Upstate C.F. SHU had similar rodent issues. Dkt. No. 50 at 8; Dkt. No. 73-2 at 121-25. Plaintiff alleged these conditions resulted in weight loss, an inability to sleep, "severe migraines, dizziness, [and other] ailments, which included extreme fatigue and hallucination[s.]" Dkt. No. 50 at 18.

Although Plaintiff testified to the SHU conditions and alleges they were inferior to conditions "for the general pop[ulation] inmates[,]" "the record lacks any evidence of the conditions for other inmates in administrative confinement or in the general prison population." Dkt. No. 50 at 18; *Davis*, 576 F.3d at 135. Therefore, Magistrate Judge Peebles correctly concluded that without the necessary evidence in the record for the Court to determine if Plaintiff suffered an atypical and significant hardship during his confinement, the Court must assume Plaintiff was deprived of a liberty interest. Dkt. No. 87 at 41. Accordingly, the Court must proceed to analyze whether Defendants provided Plaintiff with constitutionally adequate safeguards in connection with his disciplinary hearing. *Id.*

### 2. Procedural Safeguards

The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

These due process requirements include procedural protections such as (1) written notice of the charges, (2) the opportunity to appear at a disciplinary hearing with a reasonable

opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns, (3) a written statement by the hearing officer explaining the decision and the reason for the action being taken, and (4) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-69; *see also Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).

### a. Written Notice

While Plaintiff acknowledged he received written notice of the charges against him in the form of a misbehavior report ("MBR") within the prescribed time of at least twenty-four hours prior to his disciplinary hearing, Plaintiff challenged the MBR as being too general to provide meaningful notice. Dkt. No. 50 at 6; *see* Dkt. No. 73-2 at 98. In reviewing this claim, Magistrate Judge Peebles correctly articulated that due process does not require "notice that painstakingly details all facts relevant to the date, place, and manner of charged inmate misconduct[,]" but rather only requires "sufficient factual specificity to permit a reasonable person to understand what conduct is at issue[.]" *Sira*, 380 F.3d at 72. As Magistrate Judge Peebles correctly determined, the MBR provided Plaintiff sufficient notice under this standard because it included "specific facts" of his charged misconduct. Dkt. No. 87 at 44 (quoting Dkt. No. 73-7 at 9).

### b. Opportunity to Present Witnesses

In the second amended complaint, Plaintiff alleged Defendant Carberry, in her role as disciplinary hearing officer, denied witness testimony that would have provided compelling evidence of his innocence. Dkt. No. 50 ¶ 17. Although a prisoner's right to call witnesses at a disciplinary hearing may be denied "on the basis of irrelevance or lack of necessity," the record indicates Plaintiff's request for inmates Drepaul and Green to testify was not denied. *See* Dkt. No. 73-7 at 6, 16; *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (citations omitted).

18

Instead, Drepaul refused to testify, saying "I didn't see anything. I don't want to testify." Dkt. No. 73-7 at 16. Further, Defendant Carberry's hearing report reflected that Green did testify, but also indicated his testimony was not credible and that he stated he was in the yard at the time of the incident. Dkt. No. 73-7 at 27.

Therefore, this Court agrees with Magistrate Judge Peebles' determination that Plaintiff's claim is flatly contradicted by the record and that Defendant Carberry's failure to call Drepaul, a witness who refused to testify, does not violate Plaintiff's procedural due process rights. *See, e.g., Caimite v. Venettozzi*, No. 17-CV-0919, 2018 WL 6069458, *5 (N.D.N.Y. Oct. 29, 2018); *Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, *6 (S.D.N.Y. Feb. 17, 2015); *Hinton v. Prack*, No. 12-CV-1844, 2014 WL 4627120, *7 (N.D.N.Y. Sept. 11, 2014) ("The fact that these witnesses refused to testify on [the plaintiff's] behalf does not alter the fact that he was given the opportunity to call witnesses").

### c. Employee Assistant

"Although inmates are not entitled to retained or appointed counsel in prison disciplinary hearings, '[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges.'" *Moore v. Peters*, 92 F. Supp. 3d 109, 125-26 (W.D.N.Y. 2015) (quoting *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988)). "New York's regulations entitle a prisoner to an employee assistant to help him prepare for a disciplinary hearing." *Id.* at 126 (citing 7 N.Y.C.R.R. §§ 251-4.1, 251-4.2). "The assistant 'need only perform what the plaintiff would have done but need not go beyond the inmate's instructions.'" *Id.* (quotation and other citation omitted). "[A]ny violations of this qualified right are reviewed for 'harmless error.'" *Clyde v. Schoellkopf*, 714 F.

Supp. 2d 432, 437 (W.D.N.Y. 2010) (quoting *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009)).

In the present case, Plaintiff received an employee assistant, Defendant Sgt. McKinley, who relayed Plaintiff's requests to the hearing office and executed an assistance form with him. Dkt. No. 73-8 at 2, 3, 6. Plaintiff alleged he requested additional information that was not listed on the executed assistance form or requested by Defendant Sgt. McKinley. *Id.*; Dkt. No. 73-2 at 94-98, 107. Upon review of Plaintiff's claim, Magistrate Judge Peebles correctly found, nothing in the record supports the notion that providing Plaintiff with this information would have impacted the outcome of the hearing. *Clyde*, 714 F. Supp. 2d at 437 (quoting *Pilgrim*, 571 F.3d at 206); s*ee, e.g., Young v. Polizzi*, No. 16-CV-0660, 2018 WL 3949967, *8 (N.D.N.Y. July 11, 2018); *Hernandez v. Selsky*, 572 F. Supp. 2d 446, 455 (S.D.N.Y. 2008) (concluding that because the plaintiff failed to show how outcome of hearing would have been impacted, alleged inadequate assistance was harmless error not warranting denial of summary judgment). Accordingly, Defendants' motion for summary judgment is granted as to this claim.

### d. Impartial Hearing Officer

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing cases). Nevertheless, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts," and "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Id.* at 259 (citing cases). In addition to the greater flexibility accorded prison disciplinary hearing officers, the due process impartiality standard is satisfied if "some evidence" in the record supports the decision of the prison disciplinary proceeding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 447

(1985). Further, the inmate must demonstrate prejudice in connection with the alleged denial of due process by showing that it affected the outcome of the hearing. *See, e.g., Clark v. Dannheim*, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) (citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991)) (other citations omitted).

In the second amended complaint, Plaintiff alleges that Defendant Carberry was not an impartial hearing officer and that she had predetermined the results of the hearing in an "arbitrary and capricious" and "bad-faith manner[.]" Dkt. No. 50 at ¶ 19. As Magistrate Judge Peebles correctly determined, Plaintiff's claim against Defendant Carberry is without merit. Although the hearing tape was so distorted that the Court was unable to review it, the Court was able to review other evidence in the record, including the hearing record sheet and Defendant Carberry's handwritten hearing report. Dkt. No. 73-7 at 11, 27-29. The Court finds that Magistrate Judge Peebles correctly concluded that Plaintiff's bare assertions with respect to Defendant Carberry's alleged bias are unsupported by these documents and the record as a whole, and as such, are insufficient to give rise to a dispute of material fact. *See generally* Dkt. No. 73-7; *see Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) ("[A] plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment[.]"); *Boose v. Schneider*, No. 14-CV-0518, 2016 WL 8732644 (N.D.N.Y. Feb. 19, 2016).

Accordingly, because no reasonable fact finder could conclude that Plaintiff's due process rights were violated, Defendants' motion for summary judgment is granted as to this claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Magistrate Judge Peebles' March 22, 2019 Report and Recommendation, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' March 22, 2019 Report and Recommendation (Dkt. No. 87) is **APPROVED** and **ADOPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Defendants' Motion for Summary Judgment (Dkt. No. 73) is **GRANTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's amended complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 11, 2019
      Albany, New York

Mae A. D'Agostino
U.S. District Judge